The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Employers Insurance of Wausau is the carrier on the risk.
4. Plaintiffs average weekly wage is to be determined.
5. The parties stipulate to the admission into evidence plaintiffs medical records from the following sources:
a. Lakewood South Medical Practice
b. Dr. Black/Triangle Orthopedics
c. Wilmington Health Associates
d. Durham Radiology Associates, Inc.
e. Healthsouth Sports Medicine and Rehab Center
f. Durham Clinic, P.A./Dr. Goetzl
g. Cape Fear Anesthesiologists Center for Pain Management
h. Dr. Anna Bettendorf
i. Dr. Christina Gray
j. Cape Fear Memorial Hospital
6. The date of plaintiffs alleged injury was July 10, 1996.
7. The issues to be resolved are:
 a. Is plaintiff entitled to temporary total disability benefits even though her employment with defendant-employer ceased?
b. What is the average weekly wage of plaintiff?
c. During what period is plaintiff entitled to compensation?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was employed in February 1996 by defendant-employer as an assistant manager. Plaintiffs job duties involved scooping ice cream, making sodas, and entering sales at the cash register. Plaintiff was hired to work a full time day shift in defendant-employers store in Durham.
2. Plaintiffs job duties gradually increased. In addition to all of her original duties, plaintiff was required to make all of the ice cream cake orders, clean out the glass, and defrost the freezers once every two weeks. The defrosting process involves pulling eighty (80) tubs of frozen ice cream out of the freezer, hosing out the freezer, and then sucking up all the water. When the ice cream delivery truck came, plaintiff was required to load the ice cream into a walk-in freezer with the same flavors on top of each other in a stack. Plaintiff unlocked and opened the store in the morning, set up the register, marked the items in the freezer with a date, and took inventory of the ice cream flavors.
3. On July 10, 1996, plaintiff sustained an injury by accident in the course and scope of her employment when a fifteen-pound tub of frozen ice cream fell from a height of about five feet striking her in the back and right side of her ribcage. The blow from the tub knocked the wind out of plaintiff and she was unable to catch her breath or speak for a few minutes.
4. This accident was witnessed by the truck driver and Mr. Ronny Chase, a Baskin-Robbins employee. Plaintiff notified her manager, David Cho, of the accident on Friday, July 12, 1996, but did not seek immediate medical care.
5. Plaintiff continued to work for a week, believing the pain in her back and ribs would subside. By July 17, 1996, plaintiffs pain had increased and she sought treatment with Dr. Barnwell of Lakewood South Family Practice with whom she treated until January 1997.
6. When plaintiff presented to Dr. Barnwell on July 17, 1996, Dr. Barnwell found no tenderness upon examination. Dr. Barnwell treated plaintiff conservatively, recommending physical therapy. Initially, plaintiff attempted only one session of physical therapy.
7. Dr. Barnwell concluded that there was no muscle problem and recommended a TENS unit. On August 5, 1996, Dr. Barnwell put plaintiff on light duty with the restrictions of no lifting and no repetitive bending, reaching, or twisting. Plaintiff was to avoid strenuous activity. Scooping ice cream required plaintiff to bend over which she was unable to do. Plaintiff was also unable to lift the frozen ice cream tubs or to stock the tubs in the freezer. Plaintiff was unable to cut the frozen ice cream to make the cakes, and she was unable to mix the ice cream by hand. Plaintiff was unable to stand for long periods of time.
8. As of October 9, 1996, Dr. Barnwell limited plaintiffs work hours to four hours per day, because, after arriving at work at 9:30 a.m., by 1:30 p.m. plaintiff had been experiencing a tightening of her back muscles. On two occasions, plaintiff provided defendant-employer with a copy of her restrictions.
9. Because of her light duty restrictions, plaintiff was scheduled to open the store in the morning and work only a half-day. In October the schedule was changed so that the person scheduled to work the stores day shift with plaintiff would also come in at its opening so that plaintiff would not have to work alone.
10. Dr. Ugo Goetzl performed an independent medical evaluation on September 25, 1996 and also recommended physical therapy and a TENS unit.
11. Dr. Kyle Black, to whom Dr. Barnwell referred plaintiff, recommended a bone scan on November 1, 1996. Plaintiff initially refused.
12. Plaintiff presented to Dr. Robert Price who saw plaintiff on May 30, 1997. Dr. Price diagnosed a contusion.
13. Dr. Susan Torres in Wilmington examined plaintiff on July 16, 1997 and again on August 14, 1997. She ordered an MRI of the thoracic spine. The results were completely normal.
14. Plaintiff treated with Christina Gray, a chiropractor, from December 12, 1997 through May 4, 1998. Gray recommended that plaintiff remain out of work indefinitely.
15. On Friday, December 20, 1996, the person scheduled to work in the morning with plaintiff did not show up for work. Plaintiff was unable to operate the store by herself, as it required her to perform tasks outside of her restrictions and her physical abilities. Plaintiff paged the store manager, David Cho, several times asking him to come to the store to assist her. When Mr. Cho arrived, he asked plaintiff to turn over her keys and leave the store, terminating plaintiffs employment with Baskin-Robbins. Plaintiff had never received any temporary partial disability and was paying for her own prescriptions.
16. Plaintiff was unable to locate a position for which she was qualified that fell within her restrictions. Toward the end of January 1997, plaintiff found employment with The Mad Hatters Bake Shop as a cake decorator. She worked there for a little over a month, but did not continue working at that job due to pain.
17. In April 1997, plaintiff moved to Wilmington, North Carolina and was referred to Drs. Torres and Davidson at the Center for Pain Management.
18. At the Center for Pain Management, plaintiff was diagnosed as having possible RSD thoracic pain, or possible myofascial pain. Plaintiff was referred to Columbia Cape Fear Memorial Hospital for physical therapy. Plaintiff was treated with pool session therapy, education, and soft tissue techniques. She was again prescribed a TENS unit for the pain.
19. On July 17, 1998, an independent medical examination was performed by Dr. Anna Bettendorf.
20. Dr. Bettendorf noticed plaintiff had markedly abnormal posture but no neurological, motor, or sensory deficits. Plaintiff was inconsistent in demonstrating range of motion.
21. Dr. Bettendorf diagnosed plaintiff at two years subsequent to her injury with no neurological impairment or structural damage to the spine or rib cage. There was no nerve root or peripheral nerve root compression. Plaintiff had no physical injury that prevented normal movement. Dr. Bettendorf expressed puzzlement as to why plaintiff seemed worse and had a more pronounced abnormal posture than she had had after the injury in 1996. Dr. Bettendorf was opposed to giving plaintiff narcotic pain medication, recommended activity, and strongly recommended that plaintiff undergo psychological counseling.
22. At the time of the accident, plaintiff earned $4,784.39 with Baskin-Robbins in a period of 132 days. Plaintiffs average weekly wage was $253.75. Subsequent to the incident, plaintiff earned $4,569.36 in a period of 163 days. During this time, plaintiffs average weekly wage was $196.21. Plaintiff has not earned any wages since December 20, 1996, the date she was terminated, to the present, except for the period of her unsuccessful trial return to work with the bake shop.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 10, 1996, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer when a fifteen-pound tub of frozen ice cream fell on her injuring her back and right rib cage. N.C. Gen. Stat.97-2(6).
2. At the time of her injury by accident, plaintiffs average weekly wage was $253.75, yielding a weekly compensation rate of $169.25. N.C. Gen. Stat. 97-2(5).
3. Plaintiff was temporarily partially disabled from July 10, 1996 through December 20, 1996 due to her injury. Plaintiff is entitled to weekly compensation equal to 66 2/3% of the difference between her average weekly wages at the time of the injury and the average weekly wages she was able to earn during this period. N.C. Gen. Stat. 97-30.
4. Plaintiffs termination from her employment on December 20, 1996 does not constitute a constructive refusal to accept employment so as to bar her from receiving benefits for temporary partial or total disability. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397, 401 (1996).
5. Plaintiff was totally disabled as a result of the compensable injury from December 21, 1996 through July 16, 1998. Plaintiff is entitled to total disability compensation at the rate of $169.25 per week from December 21, 1996 through July 16, 1998 for the disability she sustained as a result of the compensable injury. N.C. Gen. Stat. 97-29.
6. As of July 17, 1998, the date Dr. Bettendorf expressed doubt as to the presence of any physiological reason for plaintiffs disability and suggested psychological treatment, plaintiff was no longer disabled due to the workers compensation injury. "Disability is defined by the Act as "incapacity because of injury
to earn pre-injury wages. N.C.G.S. 97-2(9) (emphasis added).
7. Plaintiff is entitled to have defendants provide all medical treatment arising from her injury by accident to the extent it tends to affect a cure, give relief or lessen her disability from the date of her injury until July 17, 1998. N.C. Gen. Stat. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for temporary partial disability at the rate of 66 2/3% of the difference between her average weekly wages before the injury and the average weekly wages she was able to earn from July 10, 1996 through December 20, 1996. This compensation has accrued and shall be paid in a lump sum subject to the attorneys fee approved in Paragraph 4.
2. Defendant-employer shall pay total disability compensation at the rate of $169.25 per week from December 21, 1996 through July 16, 1998 for the disability plaintiff sustained as a result of the compensable injury. This amount has accrued and shall be paid in a lump sum, subject to a reasonable attorneys fee approved in Paragraph 4.
3. Defendants shall pay all medical expenses including prescriptions incurred by plaintiff as a result of her injury by accident to and including July 17, 1998.
4. An attorney fee of 25% of the compensation awarded in Paragraphs One and Two is approved for plaintiffs counsel and shall be paid directly to plaintiffs counsel.
5. Defendants shall pay an expert witness fee in the amount of $275.00 to Dr. Bettendorf.
6. Defendants shall pay the costs.
This is the ___ day of May, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER